UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ANTONIO CANTU, SR**,

    Plaintiff,

v.                                                                                          CASE NO. 5:23-cv-259-WFJ-PRL

**WARDEN, FCC COLEMAN – USP II**,

    Defendant.
_____/

## ORDER

Before the Court is Antonio Cantu, Sr's ("Petitioner") *pro se* Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 13), the Warden of FCC Coleman – USP II's ("Respondent") Answer (Dkt. 21), and Petitioner's Reply (Dkt 22). After careful consideration, the Court denies the Petition.

## BACKGROUND

Petitioner is serving a 178-month term of incarceration at FCC Coleman, USP II, with projected release date of April 7, 2024. Dkt. 21 at 1. In the instant habeas petition, he makes several complaints concerning seven different prison disciplinary incidents. *Id.* at 1. Petitioner asserts that prison staff imposed harsher punishments on him than on other inmates because of his race. Dkt. 13 at 2–4. He also vaguely alleges violations of his procedural due process rights. *Id.*

Petitioner's disciplinary infractions are documented in Federal Bureau of Prisons ("BOP") incident reports. Dkt. 21 Exs. 2, 6, 11, 15, 19, 23, 27. On six separate occasions, from July 2020 to April 2022, prison officials ordered Petitioner to move from the special housing unit to his assigned housing unit in general population. Dkt. 21-1 at 8, 20, 35, 48, 61, 90. Petitioner refused each time. *Id.* On a separate occasion, prison officers found Petitioner in possession of a substance that was later tested and determined to be opioids. *Id.* at 74.

Upon each infraction, Petitioner received a written notice of the pending disciplinary hearing and explanation of his rights. Dkt. 21 Exs. 3, 4, 7, 8, 12, 13, 16, 17, 20, 21, 24, 25. Following the hearings, the Discipline Hearing Officer ("DHO") produced a written report explaining the evidence relied upon to find Petitioner guilty, the sanction imposed, and the reason for the sanction. Dkt. 21 Exs. 5, 9, 14, 18, 22, 26. Five of the six times Petitioner refused to relocate to his assigned housing unit, the DHO imposed a sanction that included loss of 14 days' good conduct time. Dkt. 21-1 at 17, 30, 45, 58, 71. For the opioid offense, Petitioner lost 41 days of good conduct time. *Id.* at 87.

Petitioner brings the instant petition to challenge the loss of his good conduct time. Dkt. 13 at 8. He asks the Court to restore 84 days of credit. *Id.*

2

# ANALYSIS

For the reasons outlined below, the Court denies the Amended Petition. The Court will first address the alleged violations of Petitioner's procedural due process rights, then his equal protection claim, and finally a bid for compassionate release that Petitioner raised for the first time in his Reply brief.

**I. Petitioner received all process due for his prison disciplinary infractions.**

Petitioner vaguely alleges that his due process rights were violated, without further elaboration. Dkt. 13 at 2–3, 7–9. While prison inmates do enjoy the protections of the Due Process Clause, these must be balanced against "institutional needs and objectives." *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974). Certain minimum procedural requirements strike this balance in the context of prison disciplinary proceedings:

> (1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals.

*Young v. Jones*, 37 F.3d 1457, 1459–60 (11th Cir. 1994) (citing *Wolff*, 418 U.S. at 563–66). Courts should not "be forced into the role of judging and reweighing the evidence presented in a prison disciplinary hearing." *Id.* at 1460. Instead, a court need only ensure that "'some evidence' exists which supports the hearing officer's determination." *Id.* Respondent notes that BOP regulations are more restrictive,

requiring hearing officers to decide based on the "greater weight of the evidence" when evidence conflicts. Dkt. 21 at 22 (citing 28 C.F.R. § 541.8).

In the instant case, the record reflects that Respondent met each *Wolff* requirement. Petitioner received advanced written notice and adequate time to prepare his response, Dkt. 21-1 at 11, 16, 24, 28, 39, 43, 52, 56, 65, 69, 81, 85; Respondent offered him a staff assistant and the opportunity to call witnesses, *id.*; and the DHOs' written reports explained the evidentiary basis for their decisions and provided justification for the sanctions imposed, *id.* at 17, 29–30, 44–45, 57–58, 70–71, 86–87. Indeed, the DHO reports reflect that the hearing officer applied the higher "greater weight of the evidence" standard in assessing Petitioner's guilt. *Id.* In short, Petitioner's procedural due process rights were not violated.

## II. Petitioner's equal protection claims are unsupported by the record.

Petitioner further asserts that he was given a harsher punishment for his infractions than other prisoners of a different race.[1] Dkt. 13 at 2–4. The equal protection of federal law is governed by the Fifth Amendment. *U.S. v. Osorto*, 995 F.3d 801, 810 (11th Cir. 2021). A Fifth Amendment equal protection claim is "evaluated in precisely the same manner as an analogous claim under the Fourteenth Amendment." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d

---

[1] Petitioner seeks only the restoration of his good time credits. Dkt. 13 at 8. Because he is only challenging the length of his confinement, a habeas petition is the appropriate vehicle for his claims. *Preiser v. Rodriguez*, 411 U.S. 475, 486–88 (1973).

1229, 1244 (11th Cir. 2003). To establish an equal protection violation, a plaintiff must show intent to discriminate. *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Elston v. Talladega Cnty Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993) (citations omitted). For example, "procedural and substantive departures from the norms generally followed by the decision-maker" can establish discriminatory intent. *Elston*, 997 F.2d at 1406.

Here, the Record shows that Respondent followed the normal disciplinary process. *See* Section I. Additionally, Respondent explained that Petitioner received harsher sanctions due to his repeat instances of the same misconduct. Dkt. 21 at 23. Petitioner did not provide evidence of other inmates with similar disciplinary history who were treated differently. *See generally* Dkt. 22; *see also Bumpus v. Watts*, 448 F. App'x 3, 5 (11th Cir. 2011) (unpublished) (dismissing an inmate's equal protection claim because he failed to identify similarly-situated inmates who were treated differently). His equal protection claim therefore fails.

**III. Petitioner does not establish that compassionate release is warranted.**

In his Reply, Petitioner argues that extraordinary and compelling reasons warrant his early release. Dkt. 22 at 1. Petitioner asserts that he has been unable to access essential medication since 2019, and that he is the only caregiver for his unhoused 88-year-old mother. *Id.* at 2, 7.

Compassionate release is governed by 18 U.S.C. 3582(c), which grants the Court discretion to reduce an inmate's term of imprisonment based on extraordinary and compelling reasons. Prior to granting compassionate release, a court must make three findings: (1) that an extraordinary and compelling reason so justifies; (2) that granting early release would be consistent with U.S. Sentencing Commission Policy Statement § 1B1.13; and (3) that the 3553(a) factors weigh in favor. *U.S. v. Giron*, 15 F.4th 1343, 1347 (11th Cir. 2021). A court need not consider the 3553(a) factors if it does not finds no extraordinary and compelling reason exists. *Id.* Petitioner bears the burden of establishing that compassionate release is warranted. *U.S. v. Heromin*, No.: 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *U.S. v. Hamilton*, 715 F.3d 328, 327 (11th Cir. 2013)).

Petitioner has not met his burden. First, he provides no medical records or other evidence in support of his allegation that he is not being provided medical care for his various mental health problems. *See U.S. v. Lozano*, NO: 8:18-cr-00202-CEH-CPT, 2023 WL 7132101, at *3 (M.D. Fla. Oct. 30, 2023) (citations omitted). Petitioner similarly fails to provide any record evidence to support his family circumstances claim. *See id.* The Court further notes that he did not submit a proposed release plan. *See U.S. v. Lee*, 848 F. App'x 872, 874 (11th Cir. 2021) (unpublished) (citing 28 C.F.R. § 571.61). And, while administrative exhaustion is

6

not a jurisdictional bar, *U.S. v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021), Petitioner does not indicate that he appealed the BOP's failure to bring a motion on his behalf or that over 30 days elapsed since the BOP did so. *See* 18 U.S.C. § 3582(c)(1)(A).

Therefore, Petitioner's request for compassionate release is due to be denied. He may submit a new motion free of the defects outlined above. The Court notes that Petitioner is projected to be released approximately three months from the date of this order.

Based on the above, it is **ORDERED AND ADJUDGED** that the Amended Petition for Writ of Habeas Corpus (Dkt. 13) is **DENIED**. The Clerk is directed to enter judgment for Respondent, terminate any pending motions and deadlines, and close the case. Because a federal prisoner does not require a certificate of appealability to appeal the denial of a § 2241 petition, *see Sawyer v. Holder*, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003), the Court will neither issue nor decline certification.

**DONE AND ORDERED** at Tampa, Florida, on January 12, 2024.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
*Pro se* party

7